**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| MATT CARROLL | * | |
| | * | |
| Plaintiff/Counter-Defendant | * | |
| | * | |
| v. | * | Civil Case No.: SAG-17-849 |
| | * | |
| DAN RAINVILLE & ASSOCIATES INC., et al | * | |
| | * | |
| Defendants/Counter-Plaintiffs | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Pending before this Court is Plaintiff/Counter-Defendant Matt Carroll's ("Carroll") Motion to Dismiss the Counterclaims Filed by Defendant/Counter-Plaintiff Dan Rainville & Associates, Inc. ("DRA"), [ECF No. 33]. I have reviewed DRA's Opposition, [ECF No. 34], and Carroll's Reply. [ECF No. 36]. No oral argument is necessary. See Local Rule 105.6 (D. Md. 2016). For the reasons set forth below, Carroll's motion will be GRANTED.

I.   **BACKGROUND**

On March 29, 2017, Carroll filed suit against his former employer, DRA, alleging violations of the Federal Fair Labor Standards Act ("FLSA"), the Maryland Wage and Hour Law, and the Maryland Wage Payment and Collection Law. [ECF No. 1, 1]. DRA engages in the "business of selling and installing commercial HVAC and ventilation units." *Id.* at 2. From January, 2016 through August, 2016, Carroll "worked as both an estimator and perform[ed] inside sales jobs for which he was paid hourly," in addition to earning a 20% commission on sales. *Id.* at 3. In this lawsuit, Carroll seeks to recover allegedly unpaid overtime wages and commissions from his inside sales job. [ECF No. 33, 3].

On June 12, 2017, DRA filed an Amended Counterclaim asserting the following claims under Maryland law: (1) Breach of Contract – Return of Unearned Draws; (2) Breach of Contract – Noncompetition and Non-solicitation Agreement; (3) Breach of Contract – Use of Confidential Information; (4) Violation of Maryland Trade Secrets Act; (5) Intentional Interference with Business Relations; (6) Detinue; and (7) Civil Conspiracy.  [ECF No. 19]. Carroll has moved to dismiss all seven counterclaims under F.R.C.P. 12(b)(1), citing this Court's lack of subject-matter jurisdiction.  [ECF No. 33].

## II.     STANDARD OF REVIEW

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). "Subject-matter jurisdiction cannot be conferred by the parties, nor can a defect in subject-matter jurisdiction be waived by the parties." *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).  Thus, "questions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised *sua sponte* by the court." *Id.* (citing *Bender*, 475 U.S. at 541).

Under Federal Rule of Civil Procedure 12(b)(1), a motion to dismiss for lack of "subject matter jurisdiction can be presented in either of two forms: (1) a facial challenge that plaintiff has failed to allege facts sufficient to establish subject matter jurisdiction," or (2) a contention that "the jurisdictional allegations of the complaint are not true." *Nicholson v. United States*, 2017 WL 2793800, at *1 (E.D. Va. May 30, 2017); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  While the plaintiff bears the burden of proving that a court has jurisdiction over the claim or controversy at issue, a Rule 12(b)(1) motion should be granted "only if the material

2

jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010); *see also Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

Pursuant to the Judicial Improvement Act of 1990, federal courts "'have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995) (quoting 28 U.S.C. § 1367(a)). To form part of the same case or controversy as the federal claim(s), the state claim(s) must "'derive from a common nucleus of operative fact[,] . . . such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 615 (4th Cir. 2001) (quoting *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 349 (1988)). Thus, where a federal court has original federal question or diversity jurisdiction over a claim, parties may "append state law claims over which federal courts would otherwise lack jurisdiction," provided they derive from a common nucleus of operative fact. *Cahill*, 58 F.3d at 109.

"There is no dispute that compulsory counterclaims are, by definition, within the supplemental jurisdiction of the court." *Long v. Welch & Rushe, Inc.*, 28 F. Supp. 3d 446, 452 (D. Md. 2014) (citing *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988)). A compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," while a permissive claim does not. *Id.* (quoting Fed. R. Civ. P. 13(a)). To determine whether a counterclaim is compulsory, courts look to: (1) whether "the issues of fact and law raised in the claim and counterclaim [are] largely the same[;]" (2) whether "res judicata [would] bar a subsequent suit on the party's counterclaim, absent the compulsory

counterclaim rule[;]" (3) whether "substantially the same evidence support[s] or refute[s] the claim as well as the counterclaim[;]" and (4) whether "there [is] any logical relationship between the claim and counterclaim[.]" *Painter*, 863 F.2d at 331 (citing *Sue & Sam Mfg. Co. v. B–L–S Const. Co.*, 538 F.2d 1048 (4th Cir. 1976)). Contrary to a compulsory counterclaim, a permissive counterclaim must have an independent jurisdictional base such as federal question or diversity jurisdiction. *See Sue*, 538 F.2d 1048, 1051 (4th Cir. 1976).

### III. ANALYSIS

**A. Carroll Did Not Waive the Defense that the Court Lacks Subject-Matter Jurisdiction Over DRA's Counterclaims.**

DRA asserts Carroll waived his defense that this Court lacks subject-matter jurisdiction over its counterclaims, because Carroll omitted the argument from his previously filed motion to dismiss under F.R.C.P. 12(b)(6), [ECF No. 13], and Answer, [ECF No. 21]. [ECF No. 34, 3]. DRA is incorrect.

Federal Rule 12(b) provides seven affirmative defenses to a claim for relief, including the defense that the Court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b). While subsections (g) and (h) of Rule 12 provide that some defenses will be waived if they are omitted from a party's first Rule 12 motion or responsive pleading, subject-matter jurisdiction is specifically exempted. Fed. R. Civ. P. 12(h). Moreover, Rule 12(h)(3) expressly states that "[i]f the court determines at *any time* that it lacks subject-matter jurisdiction, [it] must dismiss the action." *Id.* It is thus axiomatic that "a defect in subject-matter jurisdiction [cannot] be waived by the parties." *Brickwood Contractors, Inc.*, 369 F.3d at 390 (citing *Cotton*, 535 U.S. at 630).

**B. The Court Lacks Subject-Matter Jurisdiction Over DRA's Counterclaims**

Since diversity is lacking in this case and DRA's counterclaims are based solely on state law, for this Court to exercise subject-matter jurisdiction over the counterclaims, they must be

4

"compulsory" pursuant to Federal Rule 13(a). Because the four-pronged inquiry cited in *Painter* weighs against a finding that DRA's counterclaims arose out of the same transaction or occurrence that created Carroll's claims, the counterclaims are not "compulsory," and this Court lacks subject-matter jurisdiction.

First, "the issues of fact and law raised in the claim[s] and counterclaim[s]" are not "largely the same." *Painter*, 863 F.2d at 331. Carroll's claims allege only that DRA violated FLSA and Maryland's Wage and Hour Law by not paying him earned overtime wages and commissions on sales. [ECF No. 1, 1]. DRA's counterclaims, meanwhile allege that Carroll: (1) breached his contract by taking his salary "in the form of draws against future commissions" and terminating his employment with a $20,086.90 deficit (count one); (2) breached his non-compete agreement and tortiously interfered with DRA contracts by forming his own business, "JNG," and soliciting DRA customers (counts two, five, and seven); (3) breached his contract and violated the Maryland Trade Secrets Act by disclosing DRA's confidential information, such as pricing, contact lists, sales orders, and product data to his new business (counts three and four); and (4) remains in the wrongful possession of DRA's confidential information and unearned draws (count six). [ECF No. 19]. In other words, "the only connection [between Carroll and DRA's claims] is the employee-employer relationship." *See Williams v. Long*, 558 F. Supp. 2d 601, 604 (D. Md. 2008). Indeed, "[t]he legal issues raised by a minimum wage and overtime laws are clearly distinct from those raised by the laws of breach of contract, breach of fiduciary duty," violation of the Maryland Trade Secrets Act, intentional interference with business relations, detinue, and civil conspiracy. *Id. See also Wilhelm v. TLC Lawn Care, Inc.*, 2008 WL 640733 (D. Kan. Mar. 6, 2008) (dismissing the defendant's state law counterclaims involving "breach of fiduciary duty, breach of the duty of loyalty, and misappropriation of trade secrets"

because they did not share a common nucleus of operative fact with the plaintiff's FSLA claims, but relied solely on its employer-employee relationship). Thus, because Carroll's claims "'deal[] only with the question of the number of hours worked and the compensation paid[,]' the state counterclaims 'necessarily involve[] different and separate factual matters.'" *Id.* at 605 (quoting *Kirby v. Tafco Emerald Coast Inc.*, 2006 WL 228880, at *2 (N.D. Fla. Jan. 30, 2006)).

Second, *res judicata* will not bar a subsequent suit on DRA's counterclaims. *Res judicata* bars the re-litigation of a claim if: (1) the parties are the same in both the prior and subsequent litigation; "(2) the claim presented in the subsequent action is 'identical to that determined or that which could have been raised and determined in the prior litigation'; and (3) there was a final judgment on the merits in the prior litigation." *Id.* (quoting *R & D 2001 LLC v. Rice*, 938 A.2d 839, 848 (2008)). Here, DRA's counterclaims are not identical to Carroll's claims, and by virtue of the ruling made herein, could not be determined in this litigation.

Third, "substantially the same evidence" will not support or refute the claims and counterclaims in the instant case. Carroll's "FLSA and state claims will rely on evidence demonstrating defendant's agreement to pay [him], [his] hours worked, and defendant's refusal to pay [him] . . . [DRA's] counterclaims[,] [however,] will rely on almost completely different evidence, with the lone exception of the issue of [Carroll's] status as an employee." *Id.* at 606. Indeed, DRA's counterclaims will necessarily include evidence alleging: (1) the existence of contracts, their breach, and damages; (2) Carroll's access to information covered by the Maryland Trade Secrets Act and subsequent misappropriation; (3) Carroll's wrongful solicitation of DRA customers and interference with existing DRA contracts; (4) Carroll's continued wrongful possession of DRA property; and (5) Carroll and JNG's conspiracy to use DRA's trade secrets and to profit at DRA's expense. [ECF No. 19]. Thus, unlike in cases where all of the

evidence "'focuses on a single factual issue . . .' here the evidence supporting (and refuting) the claims and counterclaims will be significantly different." *Long*, 558 F. Supp. 2d at 606.

Finally, because Carroll's claims and DRA's counterclaims "do not relate to one event or issue," there is no "logical relationship" between them to support the exercise of supplemental jurisdiction. Indeed, where the only connection between the parties' claims and counterclaims is the employer-employee relationship, "numerous federal courts have refused to exercise supplemental jurisdiction over counterclaims to a FLSA claim." *Id.*

Concluding that DRA's counterclaims fail to qualify as "compulsory" under Rule 13 also reflects the federal judiciary's "'hesitan[cy] to permit an employer to file counterclaims in FLSA suits for money the employer claims the employee owes it, or for damages the employee's tortious conduct allegedly caused.'" *Ramirez v. Amazing Home Contractors, Inc.*, No. CIV. JKB-14-2168, 2014 WL 6845555, at *4 (D. Md. Nov. 25, 2014) (quoting *Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 740 (5th Cir. 2010)). Permitting the employer in a FLSA action "'to try [its] private claims, real or imagined, against [its] employees would delay and even subvert the whole process.'" *Id.* (quoting *Donovan v. Pointon*, 717 F.2d 1320, 1323 (10th Cir. 1983)); *see also Yassa v. EM Consulting Grp., Inc.*, No. CV JKB-17-593, 2017 WL 3414147, at *2 (D. Md. Aug. 9, 2017) ("To clutter these proceedings with the minutiae of other employer-employee relationships would be antithetical to the purpose of the Act.") (quoting *Brennan v. Heard*, 491 F.2d 1, 4 (5th Cir. 1974)).

Because DRA's counterclaims are not "compulsory," and otherwise lack an independent basis of jurisdiction, this Court lacks subject-matter jurisdiction and DRA's Counterclaims must be dismissed without prejudice.

## IV.    CONCLUSION

For the foregoing reasons, Carroll's Motion to Dismiss DRA's Counterclaims, [ECF No. 33], is GRANTED.  A separate Order follows.

Dated: October 23, 2017                                                                  /s/
                                                           Stephanie A. Gallagher
                                                           United States Magistrate Judge